IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                              )
                                    )
ROBERT RANDOLPH HILL                )        Case No. 06-80502
                                    )        Chapter 13
        Debtor.                     )
                                    )

_____

**MEMORANDUM OPINION**

This matter came on for hearing on July 13, 2006, and again on September 12, 2006,

upon the Objection by Standing Trustee to Confirmation of Plan (the "Trustee's Objection"),

filed by Richard M. Hutson, II (the "Trustee") on June 23, 2006, and upon the Objection of Ford

Motor Credit Company to Proposed Order Confirming Plan (the "Ford Objection"), filed by Ford

Motor Credit Company ("Ford") on June 29, 2006.  Sufficient and proper notice was given to all

parties in interest.  Benjamin E. Lovell appeared on behalf of the Trustee, Martha R. Sacrinty

appeared on behalf of Ford, and Edward C. Boltz appeared on behalf of Robert R. Hill (the

"Debtor").

The claim of Ford is fully secured by a lien on the Debtor's 2003 Ford F250 truck (the

"Vehicle") and is treated as a fully secured claim in the Debtor's proposed plan of reorganization

(the "Plan").  The Debtor proposes to pay adequate protection payments to Ford until such time

as the Debtor's attorney's fees are paid in full.  When the attorney's fees are paid in full, then the

Debtor proposes to pay Ford in equal monthly installments as may be determined by the Trustee.

The Trustee initially argued that the proposal by the Debtor for the Trustee to determine

the timing and amount of the payment of the equal monthly payments would create an

1

administrative burden on the Trustee's office.  However, at the September 12, 2006 hearing the Debtor amended the Plan to provide that the amount of the equal monthly payments will be fixed, and the Trustee withdrew his objection and supported confirmation of the amended Plan.

Ford argues that the Plan does not provide for payments in "equal monthly amounts" as required by Section 1325(a)(5)(B)(iii) and that subsections (I) and (II) of Section 1325(a)(5)(B)(iii), when read together, require that payment of "equal monthly amounts" begin at confirmation of the Plan.  For the reasons stated below, Ford's objection will be overruled.

Based upon a review of the briefs submitted by counsel, the evidence presented at the hearings, the arguments of counsel at the hearings, and a review of the entire official file, the Court makes the following Findings of Fact and Conclusions of Law.

## I. FACTS

On November 29, 2002, the Debtor entered into a retail installment sales contract (the "Contract") with Ford for the purchase of the Vehicle.[1]  The sale price of the Vehicle was $36,556.53, and the Debtor financed $34,316.73.  Pursuant to the Contract, the Debtor was to make 66 monthly payments of $762.32.  The Debtor's last pre-petition payment to Ford was on March 27, 2006, in the amount of $270.00.  On May 2, 2006, the Debtor filed his Chapter 13 bankruptcy.  On June 16, 2006, Ford filed a secured proof of claim for $19,870.80, payable at an interest rate of 11.90% per annum.  The Debtor and Ford stipulated that the amount of Ford's claim was less than the value of the Vehicle, which is $22,520.00.

On June 6, 2006, a Notice and Proposed Order of Confirmation ("the "Plan") was filed.

---

[1]Because the Vehicle was purchased 1,294 days before the Debtor's bankruptcy, Section 1325(a)(9) does not apply.  See 11 U.S.C. § 1325(a)(9).

2

Paragraph 4 of Section C of the Plan provides for the following treatment of Ford's claim:

> The debt due Ford Motor Credit secured by a 2003 Ford F250 automobile shall be recognized as secured at the interest rate of 9.75% or contract interest rate, whichever is less, when said claim is timely and properly filed evidencing a properly perfected security interest in the collateral.  Ford Motor Credit shall receive adequate protection payments of $206.00 per month until such time as Debtors attorneys fees are paid in full.  Upon the completion of payments for attorneys fees, Ford Motor Credit shall begin receiving equal monthly installments of $510.14 per month or such other amount as may determined by the Trustee.  In order that the allowed claim is paid in full, with interest, within the term of the Plan. (sic)

Plan, p. 1.  The Plan includes the following paragraph concerning the fees of the Debtor's attorney:

> The attorney for the Debtor is allowed a fee in the amount of $2,500.00 of which the Debtor has paid $200.00 prior to the filing of this case, leaving a balance of $2,300.00 to be paid by the Trustee unless otherwise ordered by the Court.

Plan, p. 2.

In the Plan, the Debtor proposes to pay adequate protection payments of $206.00 per month until such time as the Debtor's attorney's fees are paid.  When the attorney's fees are paid in full, then the Debtor proposes to pay Ford in equal monthly installments of $510.14 per month.  The difference between the adequate protection payment and the equal monthly installment is $304.14, so if that amount is paid to the Debtor's attorney each month, then the attorney will be paid in full by the end of eight months.  Beginning with the ninth month, the equal monthly payment to Ford will be $510.14; at that rate, Ford should be paid in full in about 34 additional months.  The Plan provides for fifty-five monthly Plan payments of $569.08.

On July 13, 2006, the Court held a hearing on confirmation of the Plan.  After initial arguments, the parties were given a briefing schedule and the hearing was continued.  Between

3

August 15 and 17, 2006, the Debtor, the Trustee, and Ford all filed briefs. Final argument on confirmation was heard on September 12, 2006.

## II.  ANALYSIS

**A.  Background**

This matter involves an interpretation of two related sections of the Bankruptcy Code enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") – Section 1325(a)(5)(B) and Section 1326(a)(1).

1. Section 1325(a)(5)(B)

"[W]ith respect to each allowed secured claim provided for by the plan," Section 1325(a)(5) provides three options. If the holder of the allowed secured claim accepts the plan[2] or the debtor surrenders the property securing the claim,[3] then Section 1325(a)(5) has been satisfied.[4] However, if the plan provides that the property will be retained by the debtor and the lien retained by the creditor, then three requirements must be met–one old requirement and two that were added by BAPCPA.

The first requirement is contained in new Section 1325(a)(5)(B)(i), which adds a requirement that:

> (i) the plan provides that—
> > (I) the holder of such claim retain the lien securing such claim and until the earlier of—
> > > (aa) the payment of the underlying debt determined under nonbankruptcy law; or

---

[2]11 U.S.C. § 1325(a)(5)(A).

[3]11 U.S.C. § 1325(a)(5)(C).

[4]BAPCPA did not change this portion of the Bankruptcy Code.

(bb) discharge under section 1328;
(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

Thus, a Chapter 13 plan must provide that a secured creditor retain its lien until the payment of the entire underlying debt or the entry of the discharge, not simply until the secured portion of the debt is paid.  The plan must provide that, in a case converted from Chapter 13 to Chapter 7, any secured claim continues to be secured by the debtor's property unless the claim, calculated pursuant to nonbankruptcy law, has been paid in full on the date of conversion.  This new requirement appears to force a debtor to complete her Chapter 13 plan to get any reduction in the principal and interest owed to an undersecured creditor.  However, if the creditor is oversecured, as Ford is oversecured in this case,[5] then the treatment is the same as under prior law.[6]

The second requirement is contained in Section 1325(a)(5)(B)(ii), which is unchanged by BAPCPA.  Section 1325(a)(5)(B)(ii) requires that the value of any property to be distributed under the plan on account of the secured claim be not less than the allowed amount of the claim.  See In re Barnes, 32 F.3d 405, 407 (9th Cir. 1994)(the requirement that a Chapter 13 plan provide a secured creditor with payments equal to at least the allowed amount of the creditor's claim is mandatory).  In most cases, as in this case, the property to be distributed under the plan

_____

[5]Once Ford is paid in full, the "underlying debt determined by nonbankruptcy law" will be paid and Ford's lien will be extinguished.   11 U.S.C. 1325(a)(5)(B)(i)(I).

[6]Keith M. Lundin, 5 Chapter 13 Bankruptcy § 447.1 (3rd ed. 2000 & supp. 2006)("For an oversecured creditor, the new lien retention provision in § 1325(a)(5)(B)(I) makes no difference over prior law–the lien is retained until the allowed secured claim is paid in full, which will be the same as payment in full of the underlying debt.  For an undersecured creditor, the lien is now retained after payment of the allowed secured claim–that is, after payment of the value of the collateral–until the underlying debt is paid in full or until discharge, whichever occurs first.")(hereinafter "Lundin, Chapter 13 Bankruptcy").

will be deferred cash payments, and the source of those payments will be the future income of the debtor.

The third requirement is contained in new Section 1325(a)(5)(B)(iii), which provides that:

> (iii) if--
>     (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>     (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;

Thus, periodic payments made to a secured creditor must be made in equal monthly amounts,[7] and if the creditor is secured by personal property, then the amount of the monthly payment must be sufficient to provide adequate protection to the creditor. The concept of "adequate protection" is now specifically incorporated into the amounts of payments that are to be made to secured creditors in a Chapter 13 plan.[8] If the creditor is secured by real property, then there is no

---

[7]"That periodic payments must be in equal monthly amounts probably means that the amount paid each month must be the same. The House Report supports this interpretation, stating that § 1325(a)(5)(B) was amended `to require that periodic payments pursuant to a chapter 13 plan with respect to a secured claim be made in equal monthly installments.'" Lundin, Chapter 13 Bankruptcy § 448.

[8]"Since . . . Code sections [361, 362, 363, and 364] already provide for adequate protection to be provided by Chapter 13 Debtors prior to Plan confirmation, the inclusion of the adequate protection language provided under a plan in § 1325(a)(5)(B)(iii)(II) and for the period prior to plan confirmation provided in Code § 1326(a)(1)(C), also enacted under the BAPCPA, may have been added to simply make explicit the fact that adequate protection payments must commence within thirty days of the filing of a plan or the order for relief, whichever is earlier, and then continue throughout the life of the plan, but the legislative history as to this point is lacking. Perhaps this language was added to make clear that plans that include `step-payment' provisions, where the payments usually increase over time, or those that would provide for payments to secured creditors to commence months after confirmation are now prohibited, unless the debtor can show that adequate protection is being provided to secured creditors." In re Burford, 343 B.R. 827, 838 n.7 (Bankr. N.D. Tex. 2006); Keith M. Lundin & Henry E. Hildebrand, III, Section By Section Analysis of Chapter 13 After BAPCPA, American Law Institute - American Bar Association Continuing Legal Education, ALI-ABA Course of Study 94

6

requirement that the payments be in an amount sufficient to provide the creditor adequate

protection under Section 1325(a)(5)(B).

    2. Section 1326(a)(1)

BAPCPA requires a Chapter 13 debtor to commence payments under a plan within 30

days of the filing of the petition but allows the debtor to reduce the payments to the trustee by the

amounts that the debtor pays directly to lessors of personal property or purchase money secured

creditors.  New Section  1326(a)(1) provides:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>     (A) proposed by the plan to the trustee;
>     (B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment; and
>     (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

In this district, Section 1326(a)(1)(C) payments are made by the Chapter 13 trustee[9] to

---

(July 21-22, 2005)("New § 1325(a)(5)(B)(iii)(II) provides that payments to the holder of a claim "secured by personal property" shall be not less than an amount sufficient to provide "adequate protection" during the period of the plan.  Heretofore, adequate protection was a preconfirmation concept under § 361.  Not anymore.  We can speculate that this new section is intended to prohibit Chapter 13 plans that provide payment to secured claim holders in an amount not sufficient to keep pace with depreciation of the underlying collateral.").

[9]Section 1326(a)(1) allows a bankruptcy court to "order[] otherwise."  On October 24, 2005, this Court entered a Standing Order Setting Procedures to Be Followed in Chapter 13 Cases Filed On or After October 17, 2005 (the "Standing Chapter 13 Order"), which provides that "adequate protection payments to a creditor holding an allowed claim secured by personal property to the extent that the claim is attributable to the purchase of such property by the debtor

creditors who have filed a proof of claim.[10]  Section 361 of the Bankruptcy Code provides that

when adequate protection payments are required under Sections 362, 363, or 364, all of which

are applicable to Chapter 13 cases, then such adequate protection may be provided by cash

payments, additional or replacement liens, or other relief that gives the creditor the "indubitable

equivalent" of his interest in the collateral.  "New Section 1326(a)(1)(C) requires adequate

protection of the *portion* of an *obligation* that becomes due after the Chapter 13 petition."[11]  In

this district, Section 1326(a)(1)(C) adequate protection payments are typically in the amount of

one percent of the value of the collateral, a practice that at least some other districts employ.[12]  If

the secured creditor objects, then the Court can review the proposed adequate protection payment

and, based on the facts of the particular case, make any necessary adjustments.[13]

**B.  The Objection of Ford**

Ford's main objection is that the Plan does not provide for payments in "equal monthly

amounts" as required by Section 1325(a)(5)(B)(iii).  Ford argues that "adequate protection"

payments, required by Section 1325(a)(5)(B)(iii)(II) and Section 1326(a)(1)(C), must begin

---

shall be disbursed by the Chapter 13 trustee, unless the Court orders otherwise."

[10]"No adequate protection payment to a creditor who is listed in the plan as a secured creditor shall be required until a proof of claim is filed by such creditor which complies with Rule 3001 of the Federal Rules of Bankruptcy Procedure."  Standing Chapter 13 Order.

[11]Lundin, Chapter 13 Bankruptcy § 401 (italics in original).

[12]See In re Beaver, No. 05-06123-5-ATS, slip op. at 4-6 (Bankr. E.D.N.C. January 24, 2006)(adequate protection was provided by the Chapter 13 trustee making monthly pre-confirmation payments in the amount of one percent of the value of the collateral).

[13]Ford has not objected to the amount of the proposed adequate protection payment in this case, which is $206.00 per month.

within 30 days after the petition is filed[14] and continue until the plan is confirmed.[15]  Ford argues that "equal monthly payments" to secured creditors, required by Section 1325(a)(5)(B)(iii), must begin in the first month of the plan, which is the first month after confirmation.  Because Ford is oversecured, Ford's position is that equal monthly payments must begin after confirmation and end when Ford is paid in full, which may be earlier than the end of the Plan but no later.

Ford does not argue that the amount of the adequate protection payments must be the same as the equal monthly payments.  But Ford does take the position that the amount of the equal monthly payments must "not be less than an amount sufficient to provide . . . adequate protection" to the secured creditor.  11 U.S.C. 1325(a)(5)(B)(iii)(II).  In other words, if the sole method of providing adequate protection to the secured creditor is periodic payments, then the equal monthly payments, which begin after confirmation, could be equal to or greater than the amount of the adequate protection payments but not less.

## C.  The Position of the Debtor and the Trustee

---

[14]The statute requires the debtor to "commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier," 11 U.S.C. 1326(a)(1), but since a plan cannot be filed before the petition is filed and the order for relief is entered, the date of petition will always be the earlier date.

[15]New Section 1324(b) requires the confirmation hearing to be held not less than 20 days and not later than 45 days after the debtor's Section 341 meeting, unless the court determines that it would be in the best interests of the estate to hold the confirmation on an earlier date.  11 U.S.C. 1324(b).  Since Section 341 meetings in Chapter 13 cases must be set from 20 to 50 days after the order for relief is entered, Fed. R. Bankr. P. 2003(a) ("In a chapter 13 individual's debt adjustment case, the United States trustee shall call a meeting of creditors to be held no fewer then 20 and no more than 50 days after the order for relief."), in most cases confirmation hearings will be held between 40 and 95 days after the order for relief.  Thus, Ford argues, unless the Section 341 meeting or the confirmation hearing is continued, adequate protection payments should be made for only two or three months, at which time equal monthly payments should begin.

The Debtor bases Ford's treatment under the Plan on the decision of In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006). The facts of DeSardi are similar to those of this case. Mr. DiSardi purchased a truck 1,446 days before he filed his Chapter 13 bankruptcy and financed the purchase through Chrysler Financial (now DaimlerChrysler). On the petition date, he owed approximately $11,500 on the truck, which was valued at approximately $12,500. Id. at 794. Mr. DeSardi's plan of reorganization proposed to pay DaimlerChrysler with level payments beginning in the sixth month of the plan and ending in the fifty-third month. Id. For the first through the fifth month after the petition date, the plan proposed to pay adequate protection payments to DaimlerChrysler. Id. at 795. Among other things, the DeSardi court determined that "equal monthly payments" must be equal in amount once they begin, but that such payments need not start in the first month of the plan. Id. at 805. The court rejected the argument of DaimlerChrysler that Section 1325(a)(5)(B)(iii) "mandate[s] that equal payments must be in the same amount as adequate protection payments." Id. at 807.

The Debtor and the Trustee take several positions with which Ford is in agreement. First, they maintain that adequate protection payments and subsequent equal monthly payments do not have to be the same.[16] Second, they assert that "equal monthly payments" must be level once

---

[16]This conclusion was also reached by the DeSardi court. "The objecting creditors ask the Court to read 1325(a)(5)(B)(iii)'s subsections to mandate that equal payments must be in the same amount as adequate protection payments. The Court finds this interpretation-forcing the reading of the two subsections as imposing identical dollar amounts-to be mathematically untenable when read in the context of the Bankruptcy Code as a whole. An adequate protection payment that occurs after the plan is confirmed cannot set the standard as to what the equal payments will be once they begin." DeSardi, 340 B.R. at 807.

they begin and must terminate when the secured creditor is fully paid.[17]  Third, they assert that there is no requirement that equal monthly payments extend throughout the length of the plan.[18]

The Debtor and the Trustee disagree with Ford concerning when the "equal monthly payments" must begin.  They assert that the Bankruptcy Code states no set time for such payments to begin.  In other words, as long as Ford is paid in full by the end of the case, the Debtor may make only adequate protection payments until any point in the case, then begin making equal monthly payments.

**D.  Adequate Protection Payments and Equal Monthly Payments**

The  basic rules of statutory construction are generally followed in interpreting the provisions of the Bankruptcy Code.  U.S. v. Yelling (In re Weinstein), 272 F.3d 39, 43-47 (1st Cir. 2001).  "In interpreting a statute a court should always turn to one, cardinal canon before all others.  . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Indeed, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: `judicial inquiry is complete.'"  Id.  The Supreme Court has also stated that "`when the statute's language is plain, the sole function of the courts'–at least where the disposition required by the text is not absurd–`is to enforce it according to its terms.'"  Hartford Underwriters Ins. Co. v.

---

[17]This position is consistent with Section 1325(a)(5)(B)(i)(I)(aa), which allows a plan to provide for the creditor's lien to be extinguished when the debt is paid pursuant to nonbankruptcy law.

[18]"As the DeSardi court observed, there also does not seem to be any requirement that the equal monthly amounts extend throughout the plan. This makes sense because a creditor could not insist on continued equal monthly payments once its principal and interest are fully paid." In re Blevins, No. O6-10978, slip op. at 2 (Bankr. E.D. Cal. 2006)(2006 WL 2724153)(citing DeSardi, 340 B.R. at 806.).

Union Planters Bank, N.A., 530 U.S. 1, 6 (1942)(quoting Caminetti v. United States, 242 U.S.
470, 485 (1917)); see In re Jass, 340 B.R. 411, 415 (Bankr. D. Utah 2006)(citing U.S. v. Ron Pair
Enterprises, Inc., 489 U.S. 235, 242 (1989)(a "[c]ourt's inquiry should end with the language of a
statute unless (1) a literal application of the statutory language would be at odds with the
manifest intent of the legislature;  (2) a literal application of the statutory language would
produce an absurd result; or (3) the statutory language is ambiguous.").

    Courts should "not be guided by a single sentence or member of a sentence, but look to
the provisions of the whole law, and to its object and policy."  Kelly v. Robinson, 479 U.S. 36,
43 (1986).  Courts should not focus only on the text and punctuation of a given provision:
"Along with punctuation, text consists of words living `a communal existence,' in Judge Learned
Hand's phrase, the meaning of each word informing the others and all in their aggregate tak[ing]
their purpose from the setting in which they are used."  Hartford Underwriters Ins. Co. v. Union
Planters Bank, N.A., 530 U.S. 1, 7 (1942).  Justice Thomas has observed that "[t]he plainness or
ambiguity of statutory language is determined by reference to the language itself, the specific
context in which that language is used, and the broader context of the statute as a whole."
Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

    This Court finds the language of Section 1325(a)(5)(B)(iii) to be unambiguous.
Subsection (I) of Section 1325(a)(5)(B)(iii) provides that, if property is to be distributed to the
secured creditor through periodic payments, then "such payments shall be in equal monthly
amounts."[19]  Subsection (II) of 1325(a)(5)(B)(iii) requires that "such payments" must provide

---

[19]The House Report recites that Section 1325(a)(5)(B) was amended "to require that
periodic payments pursuant to a chapter 13 plan with respect to a secured claim be made in equal
monthly installments."  H.R. Rep. No. 109-31(I), at 85 (2005), as reprinted in 2005

adequate protection to the secured creditor.  The word "and" between subsections (I) and (II) means that, <u>if the collateral is personal property</u>, then they should be read together.  The phrase "such payments" in subsection (I) refers to "periodic payments."  The phrase "such payments" in subsection (II) also refers to "periodic payments."  Subsection (II) cannot stand on its own; the reference to "such payments" can only be to the "periodic payments" described in subsection (I).  When the collateral in question is "personal property," these subsections must be read together;[20] they require "equal monthly payments" to be made monthly, in equal amounts, and at the minimum level necessary to afford the secured creditor adequate protection.  When the collateral is real property, subsection (II) does not apply and no adequate protection payments are required by Section 1325(a)(5)(B).

If the collateral securing the creditor is personal property, then "the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan."  11 U.S.C. § 1325(a)(5)(B)(iii)(II).  Ford focuses on the phrase "during the period of the plan" and argues that it refers to the period of time that the plan is in effect.  Thus, Ford argues, when the collateral in question is personal property, equal monthly payments must begin at confirmation, when the plan first becomes effective.  However, parsing Section 1325(a)(5)(B)(iii)(II) demonstrates that the phrase "during the period of the plan" modifies "adequate protection," not "such payments."  The language of

---

U.S.C.C.A.N. 88, 152.

[20]"[B]oth subsections (I) and (II) apply to claims secured by personalty."  <u>In re Lemieux</u>, 347 B.R. 460, 465 (Bankr. D. Mass. 2006).  To the extent that <u>DeSardi</u> requires subsections (I) and (II) of Section 1325(a)(5)(B)(iii) to be read independently when the collateral in question is personal property, <u>see</u> <u>DeSardi</u>, 340 B.R. at 807, this Court respectfully disagrees.

13

the statute simply cannot be read to dictate any specific time for the equal monthly payments to

begin.  See DeSardi, 340 B.R. at 805-806.  Thus, when the collateral in question is personal

property, equal monthly payments need not begin immediately after confirmation.  Once they do

begin, they must continue until the creditor is paid in full or the debtor receives a discharge at the

end of the plan.  DeSardi, 340 B.R. at 805 (citing 8 Collier on Bankruptcy ¶ 1325.06[3][b][ii][A],

p. 1325-39 (15th ed. rev'd 2006)).  The plan may provide for the creditor to be fully paid before

the end of the plan.  See 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa).  At that time, the creditor no longer

has a claim or a lien,[21] and the equal monthly payments may cease.

   Pursuant to Section 1325(a)(5)(B)(iii) and Section 1326(a)(1)(C), the debtor is required to

pay adequate protection payments to the creditor, beginning within 30 days of the petition date

and continuing until equal monthly payments begin.  Pursuant to Section 1325(a)(5)(B)(i)(I) and

(iii)(II), equal monthly payments must continue until the secured creditor is paid in full or the

debtor receives a discharge.

   This Court agrees with the DeSardi court that the amount of the adequate protection

payments do not need to be the same as the equal monthly payments.[22]  The only requirement is

---

[21]An oversecured creditor, such as Ford in this case, will be paid in full as "determined by
nonbankruptcy law," and the plan may provide for the creditor's lien to be extinguished at that
time.  The claim of an undersecured creditor not affected by the "hanging paragraph" of Section
1325(a)(9) will, of course, be bifurcated into a secured claim and an unsecured claim pursuant to
Section 506(a).  Even if the secured claim of the undersecured creditor is paid before the end of
the plan, the creditor will still retain its lien until the debtor receives a discharge because the
"underlying debt" will not have been paid as "determined by nonbankruptcy law."  11 U.S.C. §
1325(a)(5)(B)(i)(I).

[22]"Conversely, if § 1325(a)(5)(B)(iii)(II) is read as setting an independent adequate
protection amount, and not an equal payment standard, then the adequate protection payment
could be made. Amortizing payments under the plan could be independently established at a
level amount which would pay off the car loan at the end of the plan, or sooner, as the Code

14

that the equal monthly payments be in an amount sufficient to provide adequate protection.  11 U.S.C. § 1325(a)(5)(B)(iii)(II).  Thus, in most instances, the equal monthly payments will be greater than the adequate protection payments.

Congress mandated that adequate protection payments must be paid "during the period of the plan," see 11 U.S.C. § 1325(a)(5)(B)(iii)(II), but if Congress had meant to require that equal monthly payments also be paid during the period of the plan, then Congress could have said so and redrafted Section 1326(b)(1), which provides that Section 507(a)(2) claims be paid before or at the same time of each payment to creditors under the plan.  See DeSardi, 340 B.R. at 809. Since Congress did not redraft Section 1326(a)(1), nor did Congress place such language in Section 1325(a)(5)(B)(iii)(I), equal monthly payments do not have to start after confirmation of a Chapter 13 plan.  Id.

Ford's interpretation, that equal monthly payments must begin after confirmation and continue through the end of the plan, ignores Section 1325(a)(5)(B)(i)(I), which provides that the plan may provide for the creditor to retain its lien until either the payment of the underlying debt under non-bankruptcy law or until discharge under Section 1328.  Payment of the creditor over the life of the plan is consistent with Ford's interpretation, but payment over a shorter period is inconsistent with Ford's interpretation.

If equal monthly payments began immediately after confirmation, then, in some cases, the

---

intends." DeSardi, 340 B.R. at 807.  See also David G. Carlson, Cars and Homes In Chapter 13 After the 2005 Amendments to the Bankruptcy Code, 14 Am. Bankr. Inst. L. Rev. 301, 356 (2006)("In DeSardi, Judge Isgur sensibly rejected the idea that adequate protection payments should exactly equal cram down payments.  Rather, the equal payment provision simply does not apply to adequate protection payments at all.")(hereinafter "Carlson, Cars and Homes In Chapter 13").

debtor will not have enough money to pay the debtor's attorneys' fees <u>and</u> the equal monthly payments. This situation would result in a violation of Section 1326(b), which provides that "before or at the time of each payment to creditors under the plan, there shall be paid an unpaid claim of the kind specified in section 507(a)(2)." 11 U.S.C. § 1326(b)(1). Since Chapter 13 plans must provide for payment of Section 507(a)(2) claims, which include debtors' attorneys' fees, either before or concurrently with other payments, even payments on secured claims, requiring the "equal monthly payments" to begin at confirmation would result in many unconfirmable plans, <u>DeSardi</u>, 340 B.R. at 808, an absurd result that Congress could not have intended.

Changes in Section 1325(a)(5)(B) requiring adequate protection and equal monthly payments were intended by Congress to address two perceived abuses. First, because adequate protection payments were not explicitly required under prior law, unscrupulous debtors could propose plans that allowed them to use collateral for months without making payments (i.e., a moratorium on payments), then convert to Chapter 7 or move to modify their plan to surrender the collateral at a significantly depreciated value. Second, by requiring equal monthly payments over the life of a Chapter 13 plan (unless the secured claim is paid earlier), debtors cannot propose plans with a balloon payment at the end. <u>See</u> <u>DeSardi</u>, 340 B.R. at 809-811; Richard Kilpatrick, <u>Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005</u>, 79 Am. Bankr. L.J. 817, 836 (2005). Requiring, first, that adequate protection payments begin as soon as the case is filed and, second, that equal monthly payments provide adequate protection, will prevent creditors secured by personal property from suffering

16

the economic consequences of the moratorium plans and the balloon plans.[23]  New Section 1325(a)(5)(B) prevents debtors from proposing plans that provide a moratorium on payments or provide for payments that do not amortize the secured claim by the end of the plan.

### E.  Payment of Attorneys' Fees

The DeSardi court determined that adequate protection payments, like payments for debtors' attorneys' fees, are entitled to administrative priority under Section 507(a)(2) and that adequate protection payments have the higher priority.  DeSardi, 340 B.R. at 802-803 ("the car lender's adequate protection payments are senior in priority to the payments to debtor's counsel.").  However, a Chapter 13 debtor that wants to keep personal property collateral and pay the secured creditor over time is required by Section 1325(a)(5)(B)(iii)(II) to make adequate protection payments regardless of whether such payments qualify as administrative priority claims.[24]  As one commentator has noted, "It should be seen that adequate protection is separate

---

[23]One commentator suggests that DeSardi's approach would allow de facto balloon plans. Carlson, Cars and Homes In Chapter 13, at 357 ("Recall that one purpose of the equal payment rule is to prevent balloon payments at the end of the payout period. If Judge Isgur is right on this point, it should be possible to confirm a plan in which adequate protection payments are made for the first sixty months. Then, in the sixtieth month, a single balloon cram down payment could be proffered. Perhaps this plan is not *feasible*, within the meaning of section 1325(a)(6) and so should not be confirmed, but at least, on the premises of Judge Isgur, the cram down payment is *equal*. Or, if equality implies two or more payments, the balloon payment could be divided into equal parts due in the fifty-ninth and sixtieth month, consistent with Judge Isgur's premise."). However, a significant difference mandated by BAPCPA is that monthly adequate protection payments must be made until the equal monthly payments begin.  It will be the creditor's responsibility to object if the proposed adequate protection payment is insufficient to compensate the creditor for the depreciation in his collateral.

[24]Administrative expenses allowed under Section 503(b) have Section 507(a)(2) priority. Administrative expenses are most often "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  Adequate protection, on the other hand, involves a different concept, namely compensation of the creditor for the depreciation of his collateral.  See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S.

from and simply prior to administrative claims generally, and so secured creditor (sic) should be paid for depreciation before any administrative creditor gets paid." Carlson, Cars and Homes In Chapter 13, at 331. The debtor must pay adequate protection when he retains the creditor's personal property collateral because it is a requirement of Section 1326(a)(1)(C) and Section 1325(a)(5)(B)(iii)(II), not because it is a priority claim.

This Court does not agree with the DeSardi court's narrow interpretation of Section 1326(b). DeSardi, 340 B.R. at 808 ("The statute refers only to payment of any unpaid claim. There is no reference to a partial payment.")(citing In re Harris, 304 B.R. 751, 757-58 (Bankr. E.D. Mich. 2004)). Rather, the Court adopts the position stated in In re Reid, No. 06-50147, slip op. (Bankr. M.D.N.C. July 19, 2006) (Carruthers, J.), as follows:

> While § 507 sets forth the general priority scheme for the Bankruptcy Code, the implementation of that section is governed by specific provisions within each Chapter. In Chapter 13 cases, all priority claims must be paid in full in deferred cash payments, unless the holder of a particular priority claim agrees otherwise. 11 U.S.C. § 1322. Pre-BAPCPA, administrative claims were afforded additional protection by § 1326(b)(1), which provided that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid– any unpaid claim of the kind specified in section 507(a)(1) of this title." This provision required debtors to pay administrative claim holders, including their attorneys, either before or concurrently with payments to other creditors. As a result, in this district, pre-BAPCPA Chapter 13 plans generally provided for payment of attorney's fees concurrently with other secured claim holders during the first year of a Chapter 13 plan.
>
> BAPCPA amended § 1326(b)(1) by striking out the reference to § 507(a)(1) and replacing it with a reference to § 507(a)(2), the subsection that now governs administrative claims, including attorney's fees. The court can only conclude that Congress made the affirmative decision to maintain the pre-BAPCPA treatment of administrative claims in Chapter 13 plans.

Id. at 3-4. After confirmation and before the equal monthly payments begin, Section 507(a)(2)

---

365, 370 (1988).

claims for the debtor's attorneys' fees and costs may be paid each month after the payment of the adequate protection payment that is required by Section 1325(a)(5)(B)(iii)(II).[25]  Consistent with Section 1326(b)(1), debtors should be able to pay Section 507(a)(2) claims before the equal monthly payments begin.

### III. CONCLUSION

In a Chapter 13 case, adequate protection payments to a lender secured by a vehicle must begin within 30 days of the petition date and continue until equal monthly payments begin.  The amount of the adequate protection payments do not need to be the same as the equal monthly payments that begin after confirmation.

Beginning sometime after confirmation, the debtor must begin to pay equal monthly payments to the secured creditor.  Such equal monthly payments should be made monthly, in equal amounts, and at the minimum level necessary to afford the secured creditor adequate protection; they must terminate when the secured creditor is fully paid.  There is no requirement that equal monthly payments extend throughout the length of the plan.

During the period that only adequate protection payments must be made, claims for the debtor's attorneys' fees and costs (and other Section 507(a)(2) claims) may be paid each month after the adequate protection payment has been made.

The debtor may choose to amortize the secured claim over the life of the plan or pay the claim over a shorter period.  A Chapter 13 plan must provide that a secured creditor retain its lien

---

[25]"Of course, once the car lender is current on its adequate protection payments, the payments to the debtor's counsel may begin."  DeSardi, 340 B.R. at 803.

until the payment of the entire underlying debt or the entry of the discharge, not simply until the secured portion of the debt is paid.

Based on the foregoing, Ford's objection will be overruled.  However, the Court finds That the Plan does not satisfy the requirements of  Section 1325(a)(5).  Specifically, the Plan does not address Ford's lien as required by Section 1325(a)(5)(B)(i), and it does not adequately address equal monthly payments as required by Section 1325(a)(5)(B)(iii).  Accordingly, confirmation of the Plan will be denied without prejudice, and the Debtor shall be given twenty days to file an amended plan consistent with this opinion.

## **Parties in Interest**

John T. Orcutt

Robert R. Hill

Michael D. West

Benjamin E. Lovell